UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PENSION BENEFIT GUARANTY CORPORATION,

Petitioner,

- against -

TREES R' US, INC,
as plan administrator of the
Trees R' Us Defined Benefit Plan,

Respondent.

No. 23-MC-101 (JS)(AYS)

**ORDER FINDING RESPONDENT**
**IN CONTEMPT OF COURT**

APPEARANCES
For Petitioner:     Jason L. Alexander, Esq.
                    Pension Benefit Guaranty Corporation
                    Office of the General counsel
                    445 12th Street, S.W.
                    Washington, D.C.  20024-2101

For Respondent:     No appearance.[1]

SEYBERT, District Judge:

---

[1]  Petitioner indicates that in early March 2023 "an attorney purporting to represent [Respondent] Trees (Kenneth S. Feraru, Esq.) contacted PBGC. (See June 6, 2023 Status Report, ECF No. 15, at 2.) Since that time, PBGC has maintained regular communication with Mr. Feraru regarding this matter, although no formal appearance by Mr. Feraru has yet been entered for Respondent in this case." (Id.; compare Case Docket, in toto.) In addition to Respondent, Attorney Feraru was served with a copy of: PBGC's June 6 Status Report (see Cert. of Serv., ECF No. 15-1); the Court's June 9, 2023 electronic Scheduling Order regarding PBGC's Contempt Motion (see Cert. of Serv., ECF No. 16); and PBGC's Contempt Motion (see ECF No. 17-3).

Presently before the Court is the Motion for Contempt (hereafter, the "Contempt Motion") of Petitioner **Pension Benefit Guaranty Corporation** ("Petitioner" or "PBGC") filed in accordance with the Court's June 9, 2023 electronic Scheduling Order.  (See Contempt Motion, ECF No. 17.)  Despite clear notice of its deadline to do so and that "[i]f a timely response is note filed, PBGC's contempt motion will be deemed unopposed, and the Court will proceed accordingly" (June 9, 2023 Elec. Scheduling Order (emphasis in original)), Respondent Trees R' Us, Inc, as plan administor of the Trees R' Us Defined Benefit Plan ("Respondent" or "Trees"), has failed to respond.  (See Case Docket, in toto.)  For the reasons that follow, the Contempt Motion is GRANTED.

RELEVANT BACKGROUND

I.  <u>Generally</u>

PBGC is a wholly owned government corporation established pursuant to 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by Title IV of ERISA; therefore, it guarantees the benefits earned by participants in covered pension plans.  Thus, when a covered pension plan terminates without sufficient assets to pay benefits, PBGC typically becomes trustee of the plan, takes over the plan's assets, and pays guaranteed benefits to plan participants and their surviving beneficiaries, subject to statutory limitations.  See 29 U.S.C. §§ 1321-1322, 1342, 1361. Further, PBGC has the discretion

to terminate pension plans under certain circumstances, as provided in 29 U.S.C. § 1342(a). In conjunction therewith, PBGC is provided a variety of tools, including the authority to "make such investigations as it deems necessary." 29 U.S.C. § 1303(a). Hence, when an investigation becomes necessary, the PBGC Director, or his designee, may "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers . . . or other records which [PBGC] deems relevant." 29 U.S.C. § 1303(b).

## II.  The Instant Case

Trees has a qualifying pension plan and is, therefore, required to submit annual financial statements and pay premiums to PBGC. (See Petition, ECF No. 1, at ¶¶ 11-12.) In late 2019, PBGC discovered Trees failed to make its required premium filings and payments for the 2016 plan year and all years thereafter, as well as failed to submit certain other required forms. (See id. ¶¶ 13-14.) This prompted PBGC in mid-December 2019 to initiate an investigation of Trees, which included requesting Trees provide certain information and documents. (See id.) After several months of making its information and documents requests via letters and phone calls without any success in securing same, PBGC began to serve subpoenas upon Respondent, to no avail. (See id. ¶ 17 (July 21, 2020 subpoena), ¶¶ 18-20 (regarding August 12, 2020 subpoena),

¶¶ 21-23 (regarding May 11, 2022 subpoena (hereafter, the "Trees Subpoena")).)

III. <u>The Case's Procedural History</u>

The commencement of this miscellaneous action followed on January 9, 2023, with PBGC petitioning the Court for, <u>inter alia</u>, an order from this Court directing Trees to fully comply with the Trees Subpoena (hereafter, the "Compliance Order"). (<u>See</u> Petition at 6, "WHEREAS" ¶¶ 1-2.)  The Court referred PBGC's Petition to Magistrate Judge Shields (<u>see</u> Jan. 11, 2023 Elec. Referral Order), who recommended the requested Compliance Order be issued. (<u>See</u> Apr. 5, 2023 Elec. Report & Recommendation ("R&R").) Despite proper notice (<u>see</u> Cert. of Serv., ECF No. 12), Trees did not file any objections to the R&R, which this Court adopted. (<u>See</u> Case Docket, <u>in toto</u>; <u>see also</u> Apr. 26, 2023 Elec. Adoption Order.)

Thus, on April 26, 2023, this Court issued the Compliance Order directing Respondent to fully comply with the Trees Subpoena. (<u>See</u> Compliance Order, ECF No. 13.)  Of import:  In the Compliance Order, the Court "**FURTHER ORDERED that RESPONDENT IS ON NOTICE: Failure to comply with this Order and the Trees Subpoena may be punished as contempt of this Court** as provided in, <u>inter alia</u>, 29 U.S.C. § 1303(c)." (<u>Id.</u> (emphases in original).)  Respondent was unswayed; it failed to substantially comply with the Compliance Order and the Trees Subpoena. (<u>See</u> PBGC's June 7, 2023 Status Report, ECF No. 15, at 2 (reporting "Mr. Feraru has provided PBGC

with <u>some</u> documents from Trees, but that production has been severely limited in quantity and scope, and largely consists of documents related to a <u>profit-sharing plan</u>, not the <u>defined benefit plan</u> that is the subject of PBGC's investigation and action before this Court." (emphases in original)); <u>see also</u> <u>id.</u> at 3-4 (further reporting "Respondent has failed or refused to produce the information sought in PBGC's [Trees Subpoena] and is now in violation of this Court's April 26, 2023 [Compliance] Order").) As a result, "PBGC submit[ted] that Respondent should be held in contempt." (<u>Id.</u> at 4.)

In response to PBGC's Status Report, the Court issued a Scheduling Order directing PBGC to file its Contempt Motion by no later than June 23, 2023 and affording Respondent until July 10, 2023 to file a response. (<u>See</u> June 9 Elec. Scheduling Order.) PBGC complied on June 23, 2023, filing its Contempt Motion, supported by the Alexander Affidavit (hereafter, the "Alexander Affidavit" or "Alexander Aff."). (<u>See</u> ECF No. 17; <u>see also</u> Alexander Aff., ECF No. 17-1.) In addition to (1) reiterating the more than three years of Trees' failure to produce the requested information and documents, and (2) its corresponding failures to comply with (a) subpoenas, including the Trees Subpoena (<u>see</u> Contempt Motion ¶¶ 1-2 (citing Petition, ECF No.1)), as well as (b) this Court's related Compliance Order (<u>see</u> <u>id.</u> ¶¶ 5-8), PBGC further states it "has had (and continues to have) concerns about

[Trees'] Pension Plan because Trees, as the Pension Plan's administrator, has failed to meet its obligations under ERISA" and "Trees' ongoing non-compliance with the [Compliance] Order impairs PBGC's ability to fulfill its mission to protect the Pension Plan's participants and beneficiaries as required" by ERISA.  (Alexander Aff. ¶¶ 18-19.)   As previously stated, despite proper service, Trees has not responded to the Contempt Motion.  (See Case Docket, in toto.)

DISCUSSION

I.   Applicable Law

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."  Leser v. U.S. Bank Nat'l Ass'n, No. 09-CV-2362, 2011 WL 1004708, *6 (E.D.N.Y. Mar. 18, 2011) (citations omitted).

> A party or nonparty may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.

CF Fresh, LLC v. Carioto Produce, Inc., No. 20-CV-0884, 2022 WL 247743, at *4 (N.D.N.Y. Jan. 27, 2022) (quoting Fox v. Lee, No. 15-CV-0390, 2018 WL 1187404, at *3 (N.D.N.Y. Feb. 5, 2018); further citation omitted).  "A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is

addressed.'"  King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (quoting Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988)).  Further, "the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred.'" In re Chief Exec. Officers Club Inc., 359 B.R. 527, 535 (Bankr. S.D.N.Y. 2007) (quoting Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cr. 2002)).  To determine diligent compliance, courts "examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order."  Safeco Ins. Co. of Am. v. M.E.S., Inc., No. 09-CV-3312, 2014 WL 12834210, at *21 (E.D.N.Y. June 27, 2014) (quoting Schmitz v. St. Regis Paper Co., 758 F. Supp. 922, 927 (S.D.N.Y. 1991)).

As relevant to the instant action, under the authority granted to the PBCG by Title IV of the Employment Retirement Income Security Act of 1974, as amended, it may initiate investigations into covered pension plans, see 29 U.S.C. § 1303(a), including "subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers . . . or other records which [PBGC] deems relevant." 29 U.S.C. § 1303(b).  In conjunction therewith:

> [i]n the case of contumacy by, or refusal to obey a subpoena issued to, any person, [PBGC] may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or

where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records.  The court may issue an order requiring such person to appear before the [PBGC], or member or officer designated by the [PBGC], and to produce records or to give testimony related to the matter under investigation or in question.  <u>Any failure to obey such order of the court may be punished by the court as a contempt thereof</u>. . . .

(Emphasis added.)

II.  <u>Application</u>

Here, in its Compliance Order, this Court clearly and unambiguously directed Respondent to "**<u>fully comply</u>** <u>with PBGC's administrative subpoena</u>", <u>i.e.</u>, the "Trees Subpoena".[2] (Compliance Order, ECF No. 13 (emphases in original).)  Further and of relevance, in said Compliance Order, the Court also explicitly ordered "<u>that RESPONDENT IS ON NOTICE</u>:  **Failure to comply with this Order and the Trees Subpoena may be punished as contempt of this Court** as provided in, <u>inter alia</u>, 29 U.S.C. § 1303(c)." (<u>Id.</u> (emphases in original).)  Yet, given PBGC's (1) Status Report, (2) Contempt Motion, and (3) Alexander Affidavit, Petitioner has clearly and convincingly demonstrated with reasonable certainty that Respondent remains noncompliant.  (<u>See</u> Status Report, <u>in toto</u>; <u>see also</u> Alexander Aff. ¶¶ 11-16.)  Relatedly, by its court-ordered Status Report and the Alexander Affidavit, Petitioner has also

---

[2]  The Trees Subpoena was clearly and unambiguously identified as Ex. F, attached to PBGC's Petition.  (<u>See</u> Compliance Order.)

shown Respondent has not diligently attempted to comply with the Compliance Order in a reasonable manner having provided only some, severely limited, and largely irrelevant documentation, but having failed to produce the vast array of documents repeatedly requested by PBGC.  (See Status Report at 2; see also id. at 2-3 (providing a non-exhaustive list of documents and information requested by PBGC but not produced); Alexander Aff. ¶¶ 15-16; Contempt Motion ¶ 8(a)-(n) and note 2 (clarifying that list provided in ¶ 8 includes only "specific requests for which Trees has produced nothing" (emphasis in original)).)  Thus, based upon this record supporting a finding that Respondent Trees has failed to comply with the Court's clear and unambiguous Compliance Order, and in accordance with 29 U.S.C. § 1303(c), and in the absence of any defense, the Court finds Respondent Trees to be in contempt of Court.

Having found Respondent in civil contempt, the Court considers what sanctions, if any, are warranted.  "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged."  Paramedics Electromedicina Comercial, LTDA., v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 657 (2d Cir. 2004) (citation omitted).  "A district court has 'considerable discretion in determining whether a coercive sanction is necessary and, if so, the form it will take.'"  Leser, 2011 WL 1004708, *14

(quoting Leadsinger v. Cole, No. 05-CV-5606, 2006 WL 2266312, at *21 (S.D.N.Y. Aug. 4, 2006), and collecting cases). Factors a court should consider when determining whether civil contempt sanctions should be imposed are: "(1) the character and magnitude of the harm threatened by continued contempt, (2) the probable effectiveness of the proposed sanction, and (3) the financial consequences of that sanction upon the contemnor [(hereafter, the "Contempt Sanction Factors")]." In re Grand Jury Witness, 835 F.2d 437, 443 (2d Cir. 1987) (citing United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947); further citation omitted)). Further, "[a]rrest is an appropriate sanction for civil contempt as long as the confinement is conditioned upon compliance." Leser, 2011 WL 1004708, at *14 (quoting Leadsinger, 2006 WL 2266312, at *21, and collecting cases). However, "in selecting contempt sanctions, a court is obligated to use the 'least possible power adequate to the end proposed.'" Id. at *11 (quoting Shillitani v. United States, 384 U.S. 364, 371 (1966); further citation omitted).

Given the protracted amount of time Petitioner has sought the subject requested information and documents from Respondent and Respondent's pattern of recalcitrance in failing to produce said information and documents, the Court agrees with Petitioner that "Respondent has made it clear through a long history of contumacious conduct that Respondent will not cooperate

with PBGC unless there are tangible consequences for refusing to do so." (Status Report at 4; see also Contempt Motion at 4, ¶ 9 ("In situations like this one, where PBGC has obtained a court order requiring the production of documents pursuant to an administrative subpoena and the responding party has failed to obey that order, the issuing court has the power to find that party in contempt. Accordingly, this Court should find that Trees' clear disregard of the Court's [Compliance] Order warrants a finding of civil contempt against Trees." (citing 29 U.S.C. § 1303(c)).) Petitioner requests the Court follow the model laid out in its prior case, Walsh v. II Vizio Restorante Italiano Corp., No. 21-MC-3147, 2022 WL 16540656 (E.D.N.Y. Oct. 27, 2022), which employed an imposition-of-escalating-fines approach to encourage the respondent to purge its contempt of the Court's order. (See Contempt Motion ¶¶ 10-11.) At this juncture, PBGC is not seeking a further escalated sanction of having a representative of Respondent held in the custody of the U.S. Marshals Service until Trees' contempt is purged. (See id. ¶ 11.)

In consideration of the Contempt Sanction Factors and finding Petitioner's requested sanctions to be tempered:

> the Court will afford Respondent[] one final, short opportunity to come into compliance with the [April 26, 2023 Compliance] Order and, thus, voluntarily purge [its] contempt. Respondent['s] deadline to do so is five (5) business days from the date of service of this

. . . Order (hereinafter the "Five-Day Deadline["]).

Consequently, **RESPONDENT[ IS] ON NOTICE: If [it] do[es] not purge [its] contempt by the expiration of the Five-Day Deadline, a daily fine will be imposed: For each of the first ten days after the Five-Day Deadline that Respondent[] remain[s] in contempt, a $250.00 fine will be imposed; and, if Respondent[] remain[s] in contempt thereafter, the fine will be increased to $500.00 per day.**

Walsh, 2022 WL 16540656, at *3 (emphases in original).  This balanced approach "is intended to impact Respondent[] using the 'least possible power adequate to the end proposed.'"  (Id. at *4 (quoting Leser, 2011 WL 1004708, at *11 (further citation omitted)).

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED**:

A. Petitioner's Contempt Motion (ECF No. 17) is **GRANTED**, with the Court finding **RESPONDENT IS IN CONTEMPT** of the April 26, 2023 Compliance Order;

B. Respondent shall have five (5) business days from the date of service of this Order (i.e., the Five-Day Deadline) to turn over to Petitioner's counsel all the documents and records covered by the Trees Subpoena (Ex. F, attached to Petition);

C. **If Respondent fails to purge its contempt by the expiration of the Five-Day Deadline:**

   1. **For each of the first ten days after the Five-Day Deadline that Respondent remains in contempt, a $250.00 fine will be imposed;**

   2. **For the eleventh day and each day thereafter past the Five-Day Deadline that Respondent remains in contempt, the fine will be increased to $500.00 per day; and**

   3. **If Respondent remains in contempt more than thirty (30) days after the Five-Day Deadline, by no later than SEPTEMBER 1, 2023, Petitioner is to file an affidavit informing the Court of same and proposing what additional action, if any, it proposes be taken;**

D. Petitioner is directed to serve a copy of this Order upon Respondent and Attorney Kenneth S. Feraru by no later than close of business on July 18, 2023, and file proof of said service thereafter.


                              **SO ORDERED.**

                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated: July 17, 2023
       Central Islip, New York